CARROLL, DONALD K., Judge.
The plaintiff in a wrongful death action has appealed from a final judgment entered by the Circuit Court for Duval County, based upon a jury verdict for the defendant.
A principal question raised for our determination in this appeal is whether the *482 trial court erred in giving its instruction to the jury concerning the legal effect of negative evidence, in the light of the conflicting testimony of witnesses on certain points at the trial.
The plaintiff-appellant filed this action for the wrongful death of her husband, who was killed in 1962 while operating his automobile across a railroad grade crossing when it was struck by a train or “cut” of railroad cars, which was operated and controlled by the defendant, Jacksonville Terminal Company.
To the plaintiff’s complaint the defendant filed its defenses, denying the negligence charged and alleging that the collision occurred solely or in part as a result of the deceased’s own negligence. Another defense was assumption of risk.
At the end of four days of trial the jury brought in a verdict for the defendant, and the trial court thereupon entered the final judgment appealed from. The court later entered an order denying the plaintiff’s motion for a new trial, which1 order is also appealed from herein.
Without attempting to set forth in detail the evidence adduced at the trial (comprising three volumes of the transcript and 544 legal-size pages), we mention the following as undisputed facts that show the setting out of which arose the legal problems before us: At about 10:20 o’clock on the night in question the decedent, who was a switchman employed by the defendant, was driving his automobile easterly on Church Street in the City of Jacksonville across the defendant’s tracks, running north and south, near where he was to begin work in the defendant’s railroad yard. After crossing three separate storage tracks about 75 feet west of the defendant’s tracks, his automobile was struck by the leading end of a train or “cut,” which was backing up in a northerly direction on one of the defendant’s tracks. The tracks at this crossing, which is located a short distance in a northwesterly direction from the Jacksonville Terminal Station, were frequently used by the defendant in its switching operations. The evidence further showed that at the time of the collision the decedent was employed by the defendant as a member of a train crew which was assigned duty at or near the crossing in question. He had been employed by the defendant for approximately ten years and was thoroughly familiar with the layout of the tracks and the usual movements of the trains in the yard at that point. Another employee of the defendant testified, without contradiction, that the street crossing lights were flashing and the warning bells at the crossing were ringing, but the decedent did not stop.
As frequently occurs at trials of railroad grade crossing cases, there was a conflict of testimony at the trial in the case at bar as to whether the train crew blew a warning whistle and showed a warning light before the collision. The foreman, who was in control of the railroad cars’ movement, testified that he was riding in the vestibule of the most forward car and that he sounded a compressed air whistle, with a loud, clear sound, continuously from a distance of 500 feet from the crossing, and that the vestibule was lighted by the white light of a switchman’s lantern. About 12 witnesses testified that they heard the whistle and saw the light; others testified that they saw the light but did not hear the whistle; while still others testified that they heard the whistle but did not see the light.
Out of this conflict between the positive and negative testimony concerning the whistle and the white light grew one of the principal points in this appeal — whether the trial court properly charged the jury concerning the relative weights to be given positive and negative evidence.
At the defendant’s request, the trial court included the following in its instructions to the jury:
“Where negative testimony is relied upon to contradict positive evidence, it should appear that the negative statements were made by persons whose attention was directed to the facts in *483 ■quired about, that they were watching, looking and listening for the fact; not ■only that the opportunity for observing the fact existed, but their attention must have been directed to it. The mere negative testimony of a witness that he did not hear the whistle blow and did not see the light does not overcome positive testimony that the whistle was blowing and the light was burning.”
In her brief the appellant contends that the giving of the foregoing instruction, in view of the evidence in this case, constitutes reversible error under the decision in Tyus v. Apalachicola Northern Railroad Company, 130 So.2d 580 (Fla.1961). In reply, the appellee contends in its brief that the cited case stands as authority for the giving of the said instruction. We agree with the appellee’s position in this matter.
Like the case at bar, the Tyus case involved a railroad crossing accident, and the testimony of witnesses at the trial was in conflict as to whether the railroad crew gave warning signals while the train was approaching the crossing. In its opinion the Supreme Court of Florida had occasion to discuss the probative force of negative evidence that contradicts positive evidence. The Supreme Court quoted the following statement from an earlier decision as in accord with reason, logic, and the great weight of authority:
“When negative testimony is relied upon to contradict positive evidence, it should appear that the negative statements were made by persons whose attention was directed to the fact that they were looking, watching and listening for the fact. Not only that the opportunity for observing the fact existed, but that their attention was directed to the fact * *
The Supreme Court then explained the gist of this rule as follows:
“The gist of our rule in relation to negative testimony in the face of positive testimony to the contrary is that if a jury decides that the attention of the witness whose testimony is negative in character, is actually directed to the fact or situation, about which he later testifies, regardless of the reason therefor, said jury may consider such negative testimony and accord to it the weight it may deem proper.”
In addition, the Supreme Court recognized the fundamental rule concerning the function of the jury in comparative negligence cases (such as the instant case), saying:
“The true query before us is whether, if there be conflicting testimony on the question of the defendant’s negligence in a tort action, particularly wherein the comparative negligence rule is applicable, is such question for the jury or may it be determined by the court as a matter of law. Not only is this question in this jurisdiction absolutely within the province of the jury to determine, but such is the universal rule.”
Applying what we believe to be the doctrine announced in the Tyus case, we think that the evidentiary situation created by the conflict between the positive and negative testimony concerning the train crew’s blowing of the whistle and flashing the white light before the collision, made it most appropriate for the trial court to try to enlighten the jury through an instruction as to the rule which' the courts have worked out in order to aid the jury in weighing the relative merits of conflicting positive and negative testimony. The fact that the giving of such an instruction might in a given case be more advantageous to one party than to the other is, of course, not a matter for consideration by the courts. We hold that the giving of the charge objected to by the appellant did not constitute a reversible error under the circumstances shown in this record.
 Another important point raised by the appellant in this appeal is whether the *484 trial court erred m refusing to admit evidence at the trial to the effect that the defendant’s own rule prescribing a certain speed limit was applicable to the train or cut involved in the said collision, and erred in failing to rebuke or stop the defendant’s counsel from arguing to the jury that the said speed limit was not applicable in the case at bar. We have examined the rule in question and find that its language is not clear in its statement of the exact circumstance that must exist before the said speed limit shall apply. In any event, we are not prepared to say that the trial court committed reversible error with respect to the applicability of the rule in question, and the burden in an appeal of this kind falls upon the appellant to demonstrate reversible error.
The present appeal presents almost a perfect example of the validity of the fundamental principles that have developed through the centuries in our court system: the exclusive power in a jury of laymen to determine questions of fact in law actions, with the aid of legal guidelines furnished by the trial judge; and the broad discretion in the trial judge in the making of rulings designed to help the jury in arriving at the truth in the factual situation proven by competent evidence, in order that the ultimate object of the courts — to ascertain the truth and accomplish justice under the law — may be attained as often as humanly possible. Under such a system the jury in the case at bar found for the defendant, and we think that there was sufficient competent evidence at the trial from which they, as reasonable men, could have lawfully found as they did. This is not to say, of course, that on the same evidence another jury might not have legally found, as the determiners of the facts, in favor of the plaintiff. This due process extends to the appellate level. Here both parties have brilliantly argued their respective positions, in their oral arguments before this court and in their written briefs.
Finding that the above-discussed points and other points raised in this appeal are without substantial merit, the final judgment and the order appealed from must be and they are
Affirmed.
WIGGINTON and RAWLS, JT., concur.